the judges pronounced their opinions.
Judge Cabell.
Jones Co., having obtained a judgment against David Lusk, issued a fieri facias against his goods and chattels, which execution was put into the hands of Troyman Wa’ytt, a deputy sheriff for the county *429 »{ Rockbridge, and was levied on certain goods, which were restored to Lusk, on his giving a forthcoming bond, in the usual form, and with tfte usual condition. A very short time before the day of sale, another execution, a ca. sa., in favour of Boys M^Calmoni, against the said Lusk, was put into the hands of the same deputy sheriff, Troyman Waytt, who had taken the delivery bond aforesaid ; and he levied it on Lusk's body. Lusk being still in the possession of the same goods embraced by the delivery bond, tendered them to Waytt, in discharge of his body. Waytt, who appears from the testimony to be a man of most unexceptionable character, and incapab'e of intentional impropriety in the discharge of his office, received the goods, knowing them to be the same included in the delivery bond, and thereupon discharged Lusk's body ; but he did not receive them until he had convinced himself of the propriety of the measure, by consulting those in whose judgments he had more confidence than his own, nor until he had obtained from the attorney of Boys &? JLTCalmont, positive instructions to receive them. Waytt attended at the time and place appointed for the delivery and sale of the goods, and was required, on behalf of the securities m the bond, either to produce the goods as he had the possession of them, or to give up the key of the store where they were lodged, that the friend of the security might deliver them up in discharge of the bond. He refused to comply with either of these propositions, but returned the bond forfeited. A judgment, and award of execution thereon, having been rendered against Ramsay, one of the securities, he obtained an injunction from the chancellor of the Staunton district; who, on the hearing, was of opinion that, an execution being once levied, the lien on the property still continues, notwithstanding the giving of a forthcoming bond; and that the conduct of Waytt (although he believed him incapable of intending to commit a fraud) was, nevertheless, ipso facto, a fraud against the securities ; that the goods would have been delivered but for his improper interference ; that, by such in *430 terference, he made himself responsible to the creditors, and that the Court of equity ought to relieve against all persons claiming under an execution, thus improperly conducted; and, finally, perpetuated the injunction. From which decision an appeal was taken to this Court.
This case must, in my opinion, be decided on general principles ; for it has no special circumstances. Those parts of the bill which allege that the securities were induced to join in the bond, solely on a previous stipulation, made in the hearing of the deputy sheriff, that the goods were to remain in their care and safe keeping till the day of sale, and then to be delivered by them to the sheriff, jn discharge of the bond; and that, in consequence of this arrangement, the goods were actually committed to the securities. All these circumstances are flatly denied by the answer. The answer, moreover, is strongly support» ed by the testimony of John M-Cleland, who was present, and aided in taking the inventory of the goods. He thinks there was nothing more than the general trust and confidence in cases of delivery bonds, and deposes positively that Lusk, the principal, had, after the execution of the delivery bond, the use of the store, and might have sold the goods if he had been disposed to do so. The allegations of the bill are not supported by a single witness ; for I throw' out of the case the deposition of Robert Moore, one of the securities in the bond, as being an incompetent witness. The release executed to him by his security, Ramsay, was a mere nullity. Moore was bound to Jones £s? Co., the obligees ; and they only could release that obligation. They have not done it, and the obligation remains. But, admit him to be competent, I cannot believe him; for, in addition to the interest which he still, feels to vacate the delivery bond, it cannot be forgotten that he endeavoured, in the first instance, to shield the goods against the operation of the'execution, by settingup a fraudulent claim of interest in them. I call it fraudulent,, because it was quickly abandoned, and has not been *431 since asserted. I have thought it necessary to strip the case of these circumstances, that we may more clearly perceive the real question in controversy; but I am not prepared to say that they would have produced any change in my opinion, even if they had been fully established.
The great question in this case is, whether it was competent to Lusk, after the execution of the delivery bond, to tender the same goods, in discharge of his body taken ®n another execution, i’he minor questions, whether it was competent to the same sheriff, who had levied the first execution, and ha!d taken the delivery bond, to receive them, in discharge of the second execution; and whether, having thus received them, and being thus in possession, he was bound to sell them under the first execution, are, in fact, only different modifications of the same proposition. They must all depend on the legal effect of an execution, in relation to the lien upon, or change of the property against which it issues, or on which it has been levied. When I use the term legal, I shall, of course, be understood as alluding as Well to our statutes, as to the common law.
The delivery of an execution to the sheriff does not alter the property of the goods, for that still continues in the defendant. It however binds the property, by which nothing more is meant, than that any subsequent sale by the debtor will be void ;the goods being, from that time, in the language of Gilbert, (Law of Executions, p. 13, 14.,) “ attendant to answer the executionor, as is more distinctly stated in 2 Equity Cases Abr. (p. 381.) “ if the defendant make an assignment of them, unless in market overt, the sheriff may take them in execution.” But by levying the execution, the property of the goods is changed, and they are in the custody of the law. The sheriff acquires, by the seizure, a special property, but it is ^.special property only ; the general property being devested, and in abeyance. (1 Salk. 323., Clerk v. Withers; also, 6 Mod. p. 293, where the-same case, and particularly this *432 principle, will be found more at large.) As a consequence of this principle, that the property is devested, and out of the defendant, and that the goods are in the custody of the law, he is said to be discharged of the judgment; that is, the plaintiif cannot proceed on the judgment by sci. fa., or action of debt, but must proceed against the sheriff. But what is the nature of the special property acquired by the sheriff’ It is only that he acquires the right, and incurs the obligation, to possess, take care of, and sell the goods. As a consequence thereof, he is liable to the plaintiif for rescous, or other casualties, and may. therefore maintain trover or trespass against any person who may take away or injure the goods.(a) But if, at any time, _ # ¶ 1 A w « the state of things be such that (in the language of Lord Holt, in Clerk v. Withers, 6 Mod. 292.) “ there be none vyho can make title to the goods under the execution, the ftrs(; owner ought to have restitution.” By which I understand, that the debtor is restored, not only to the possession, but to all his right of property.
I have premised these general principles, that we might clearly perceive the situation of the goods when under execution at the common law, and the nature of the lien which the execution has upon them. Let us now consider the situation of the goods after a delivery bond has been given; and we shall thus be able to determine whether the above principles are still applicable to them, and whether there remains any Ken upon them.
When an execution shall be levied on any goods and chattels, ouract of assembly,(b) instead of making it the Qf t]ie sheriff, as at common law, to take them out of the possession of the owner, and to retain that possession till the day of sale, gives to the owner a right to tender, and imposes an obligation on the sheriff to receive, bond and good security, payable to the creditor, with condition to have the goods and chattels forthcoming at the day of sale appointed by the sheriff, who “ shall thereupon suffer the said goods and chattels to remain in the possession, and at the risk of the debtor until that time ; *433 and if the owner of such goods and chattels shall fail to deliver up the same according to the condition of the bond, or pay the money or tobacco mentioned in the ex-ccution,5’ the bond is to be returned to the proper office, and to have the force of a judgment. This procedure is unknown to the common law. What is its effect, and what becomes the situation of the goods l The sheriff has bo right to seize them, by that execution, against the will of the debtor, either before or after the day of sale ; for the function of levying has been already performed, and he has nothing more to do than to sell them, in case they shall be forthcoming at the day of sale, according to the condition of the bond. He is not liable for the taking away, or for the injury or total loss of the goods ; ior they are bo longer ;n his custody, but in the custody of the debtor, and at his risk. He can bring no action for, or concerning them; ior none of the reasons, on which a sheriff’s right to sue is founded, are applicable to his case. He can take no measure to force the debtor to have the goods forthcoming at the day of sale; for the debtor has his op» tion to deliver them, or to incur the consequences of a forfeiture. If, then, the sheriff, by receiving the delivery bond, parts with the possession of the goods, has no right to seize them again, is in no manner liable for them, can bring no action concerning them, nor take any measure to compel their delivery, it would seem to me to be a necessary inference, that the execution retains no vestige of lien on the goods; “ there is no person who can make title to them, by virtue of the execution;” and, of course, the debtor is restored to all his rights over them.
It is the busipess of Courts to decide, not the moral duties, but the legal rights of the parties litigant. Delivery bonds were introduced for the benefit of defendants in execution. I presume there can be no doubt, but that the principal in a delivery bond has the legal right, which no Court can obstruct, to forfeit his bond, hy failing to have the property forthcoming on the day appointed for its delivery and sale. He incurs thereby the penalty an *434 nexed by law; and that is all that others can require oi him. If he has the right to hold back the property on the day of sale; by means whereof the bond becomes forfeited, and the execution is at an end ; cui bono, and on what principle, shall he be prevented from making any disposition of it he may please, before the day of sale ? This power of previous disposition of the property, forms, in my opinion, one important ingredient in the policy of our laws on this subject, and has been often exercised to the great benefit of defendants, whilst it can never injure the plaintiffs in the execution.
It is said that the execution is an entire thing. This is unquestionable; but it is equally true that a delivery bond, before its forfeiture, is a part of the execution; and although it was introduced for the benefit of defendants, yet it is in no way injurious to the plaintiffs, as it affords there ample amends for the lien on the property which the execution before had, but which lien is removed and substituted by the delivery bond. The execution is not at an end ; it is not discharged ; but from the moment of giving the delivery bond, and until the day of sale, it does not operate as at common law upon the property; it exists, during that-périod, in the delivery bond only. If the property is produced on the day of sale, the bond has accomplished its object, and is as much out of the case as if it had never existed ; the execution resumes its operation as at common law, and the sheriff proceeds to sell accordingly. If, however, the bond is forfeited, the execution is then completely at an end ; the bond assumes a new character, attains the dignity of a judgment, and becomes the foundation of a new procedure.
Much reliance was placed, in the argument of this case, on the different forms of expression applied by our J.cts of Assembly, to forthcoming, and to replevy, bonds it is admitted, on all hands, that the latter operated a complete discharge of the property; and with respect to them, the language of the law is, that the sheriff shall restore the goods to the debtor; whereas, with respect to *435 delivery bonds, he is to suffer the goods to “ remain” in the possession, and at the risk, of the debtor. From this difference of phraseology, an effort was made to prove a difference of intention in the legislature. But I think the difference of expression may be easily. accounted for, without this result, by attending to the history of our laws, and the known practice of the country. The first of our statutes now extant, on the subject of executions, is the act of Car. I. March, 1642-3, (1 Hen. Stat. at large, 259.,) referring to a former law on the same subject, which, however, appears to have been lost. From that period, to the year 1726, executions were payable in property at valuation, which the plaintiff was bound to receive in discharge. The proceeding was a very speedy and summary one. The act of 14 Car. II. March, 1661-2, (2 Hen. Stat. p. 80.,) directed, that if either party neglected to appoint appraisers, within three days after the service of the execution, the sheriff should appoint appraisers for the party so failing; and that the sheriff should not, before the appraisement, remove the goods out of the possession of the “plaintiff i” This is certainly a typographical error. The assembly clearly meant defendant, for the act goes on to say that the surplusage shall he paid to him, and that, after appraisement, the property shall vest in the sheriff, for the use of the creditor, to whom the sheriff is directed to give notice, that he may take it into his own possession. The act of 4 Anne, 1705, (3 Hen. Stat. at large, 385.,) gives us the first notice of a delivery bond; but it was a bond to produce the property at the end of three days, for appraisement. The act of 1726, (Virginia Laws, edit. 1733, p. 356.,) repeals the former laws, allowing executions to be paid in kind, and directs the sheriff to sell the property, on giving three days’ notice, allowing the debtor, however, to give a delivery bond, to have the goods forthcoming on the day of sale, whereupon the sheriff is to suffer the goods to remain in his possession, and at his risk ; and provides, also, that if the debtor, on the day of sale, shall *436 tender the debt, damages, and costs, the sheriff shall accept the same, and restore the property to the debtor. The act of 1748, (edit, of 1769, p. 190.,) so far as relates to this subject, is substantially a copy of the act of 17 '6 ; and so stood the law until the year 1769. I account for the term “ remain,” in the first clause, on this consideration, that the usual practice is for the defendant who means to avail himself of the privilege of giving a delivery bond, to give it on the service of the execution, before, the property is removed from his possession. It is indubitable that this is the couvse usually pursued now, and must have been much more frequently pursued, formerly, when the time between the service of the execution and the day of sale, was so much shorter than it is' at present. The goods, although seized, not having been taken out of his possession, were very prope, ly said to be suffered to remain in his possession. Besides, the legislature contemplated not only the possibility, but even the probability, that they would not, in the mean time, be disposed of by the debtor, but be forthcoming at the day of sale; and on this ground, also, the expression would be appropriate. But, then, it is contended, that the term restore is used in the proviso relating to the tender of the debt, &c. on the day of sale, both in the act of 1?26, and of 1748. There is one stale of things which would render that term, or some equivalent one, necessary; and that is, where the debtor delivered the property on the day of sale, but, afterwards, on the-same day, tendered the money, &c. In that case it would be incumbent on the sheriff not to sell, but to restore the goods to the debtor. There is no other state of things to which that term could, with propriety, be applied. If the goods were not produced at the day of sale, and delivered to the sheriff he could not “ restore” them to the debtor. They were-already in th.e possession of the debtor; he alone had the control over them, and he required no act on the part of the sheriff, to complete bis title, to them» This expression, however, is omitted *437 ¿a the act of 1769, in relation to delivery bonds. The act of 1748 gives a new privilege to defendants, by allowing replevy bonds, aud directing that where an execulion has beer, levied, and the debtor shall, within five days, or at the time of sale, tender bond and security to pay the debt, See. within three months, the sheriff shall restore the goods to the debtor. This law expressly contemplates a case where the goods have been actually taken out of his possession, and, therefore, it provides, not for their remaining in his possession, but for their being restored to him. But I think it unnecessary to rely on the critical disquisition of terms, for the discovery of the legislative intention, when that intention has beeu clearly and positively expressed, as I conceive it is in the preamble of the act of 1769, (Chan. Rev. p. .3.,) which explicitly declares, that the previous act of Assembly, allowing the debtor to give a delivery bond, had provided no remedy for the creditor or officer, in case the debtor refused to deliver up the goods and chattels according to the condition of the bond; and that the creditor or officer, being therefore obliged to commence a new suit on such bond, was compellable, on serving another fieri facias, again to accept security to have the estate taken forthcoming, and might be thereby prevented from ever recovering the debt. This proves, to my mind, that the legislatu -e thought that the giving a delivery bond released the property; and although that legislative exposition of the law might not be binding on the Courts, as to cases occurring before, yet I should think it conclusive as to all subsequent cases.
I am, therefore, of opinion, not only on general principles, but on a construction of our acts of Assembly, that a defendant in execution, on giving a delivery bond, is restored to all his rights of property; and, of course, that it was competent to Lusk, in the case before us, to tender the property embraced in the delivery bond, in discharge of his body on the second execution. If it be competent to him to tender the property, it follows, necessarily, that *438 it was competent to,- and obligatory on, the sheriff to receive it. The circumstance of the sheriff’s knowing; that the goods tendered were the same included in the delivery bond, cannot affect the case. That knowledge can» not destroy the rights of the debtor over his own property, Nor is there, in my opinion, any thing in the assertion that the sheriff, being in possession off the goods, should proceed to sell them under the first execution. He-is its possession, and has a special property in them by virtue of the second execution, and is authorized and bound to sell them under that only. Nor can the plea of disability„• by the act of the law, apply to this case ; for it was the party’s own act that put the goods into the custody of the law.
One word as to the securities to this delivery bond. I see nothing in their case to distinguish them from other securities. The law contemplates the liability of securities for the default of their principal. It is for the sole purpose of making them liable, that the law has required them to be given. , They arrested the progress of Jones Go's execution, by their own voluntary act, by their confidence either in the integrity of Lusk in delivering the property, or in his ability to pay the debt, or to in» demnify them for the failure. They voluntarily became bound that Lusk should delivér the property, or pay the debt, or that they would pay it for him. They now complain that he has disappointed and defrauded them. Admit it. But let the loss fall on those who have imprudently trusted him, and not on just creditors, who, but for their interference, might long ago have received their debt.
On the main question, then, I am of opinion that the decree is erroneous, and ought to be reversed. I give no opinion on the other points, made as to parties and jurisdiction, not deeming it necessary, according to the view that I have taken of the subject.
*439 judge Roane.
I am not certain that the proofs in this cause fix upon the appellant, Waytt, any particular knowledge of I.usFs agreement, that the appellee, and Moore, should retain the custody of the property until the day yf sale, or of their actual custody thereof, in pursuance of such agreement, so as to convict him of a fraud, in acting in contravention thereof; yet the circumstances of the case clearly justified a resort to a Court of equity, to obtain a discovery of this fact from him, and to eviscerate the transaction. That resort was also necessary, for the purpose of making Waytt a party to this suit, who was no party to the judgment on the forthcoming bond. It is also justified by the consideration, that although the goods taken under the first execution., and for the delivery of which a forthcoming bond was taken, were not, in fact, delivered by the parties thereto, on the day appointed for the sale, (a circumstance, which might, possibly, have weighed with the Court of law* in rendering the judgment now enjoined,) yet that delivery having been, in fact, prevented by the act of the sheriff, who also had them already In his possession, i>y virtue of the second execution, with a full knowledge that they were the same goods, it Was unconscionable in him to sell them to satisfy the last execution, and to return the bond forfeited which was taken on the first. The case, str ipped of the circumstances tending to convict the sheriff of a fraud as aforesaid, depends upon the question, whether the lien acquired on goods seized in execution, and redelivered to the debtor on his entering into a forthcoming bond, is lost, by that circumstance, before the day of delivery has arrived, and the bond is forfeited by the nondelivery of the goods ?
This question has never yet received the deliberate consideration of this Court. There have been decisions in relation to replevy bonds, and to forthcoming bonds, after the same had become forfeited. The cases of Downman v. Chinn,(a) and Echols v. Graham, (b) are of ibis last, description. But there are no decisions of this *440 Court apptying to the effect of such bonds, before the day of delivery has arrived. I shall, therefore, consider this as a new question.
I will consider this question, 1st. Upon the acts, allowing a forthcoming bond to be given, anterior to that of 176-1, ch. 3., which placed them on their present footing and, 2dly. As affected by that act ; but I will first premise some general observations, under the influence of which the case, in both aspects, is to be tested.
I will remark, in the first place, that an execution is the life of the law ; that it is the end, and effect, and fruit of the law; that it differs from an action, which only continues until the judgment is rendered ; and that, consequently, a release of all actions would not release it.(a)
I will observe, secondly, that, as the law subjects the sheriff to an action, at.the suit of a creditor, in respect of the goods Calcen, so it vests him with such a possessory property therein, that if they are taken out of his possession, he may maintain trespass or trover for them, against the wrongdoer, as well as a carrier or bailee of goods may; and that it is no plea for him to say that they were rescued, (b)
Thirdly, I will remark, that, by the common law, the fi.fa. had relation to the time of awarding it, and that if, after the teste of it, the defendant had sold the goods, although bona fide, they were liable to be taken in execution, with the exception of a bona fide sale in market overt; and that the principle of this position is not changed by the act of 29 Car. II., (and our act on the same subject,) by which the property is bound only from the time of delivering the writ to the sheriff, (c) This principíeos conclusive, to show that the possession of the goods may be in the defendant, and the light in the creditor ; that this right accrues even before the service oí the execution, and relates back, after, by a service thereof, it has attached on particular goods, so as to overreach all intermediate dispositions thereof.
*441 Fourthly, But that the general lien on the debtor’s property, arising from the delivery of the writ to the sheriff, is released by the particular one acquired upon the identical goods, seized by a fieri facias. I infer this as a corollary, from its being held that, by the seizure to the amount of the execution, the defendant is discharged; for that the plaintiff having made his election, and taken his goods, no other remedy could be had against the defendant, but only against the sheriff;(a) and, again, that the judgment is discharged by a seizure on a fi. fa.(b)
Fifthly, It is held that, by the seizure, the property is devested out of the defendant, and in abeyance;(c) and being so devested, it will require, I presume, clear and explicit acts, or provisions or the law, to revest the same in him before the execution has performed its office.
Sixthly, That an execution is an entire thing, and if once lawfully begun, must be completed ;(d) and that when it is once begun it cannot be suspended(e) This principle would equally go to reprobate any suspension of the lien, (which is the life of the execution,) unless there be positive words to that' effect; and, especially, if there be ether grounds on which to account for the custody of the goods seized being granted to the defendant.
And, seventhly, That subsequent statutes, which give accumulative remedies, or penalties, neither repeal former statutary ones, nor such as are given by the principles of the common law;(f) and that the criterion, determining whether they are accumulative or not, seems to be, whether the first statute or remedy may stand with the last.
Bearing in mind these several principles and positions, let us examine the first branch of our inquiry ; namely, the state of the question before us, as depending upon the acts prior to that of 1769. ch. 3.
This provision in favour of forthcoming bonds, seems to have been first distinctly introduced into our code in she year 1720. (See, edit, of 1733, p. 362. sect. 16.)
*442 That act ''after declaiing, in the previous seclion, that; where goods shall be seized by a ft. fa., and the debt shall not be paid within three days, the sheriff shall proceed to sell the same on the third day after the next Sunday. on which day due notice of the time and place of sale shall be published at the adjacent church, or chape! enacts, in substance, by way of proviso, that, if the debtor shall give sufficient security to the sheriff, of other officer serving the same, to have the same goods forthcoming at the time of sale, it shall be lawful for him to accept such security, and thereupon to l' suffer the said goods to remain in the possession, and at the risk of such debtor, until the time aforesaidwith a further proviso, that if, at the time of sale, the amount of the debt shall be paid or tendered to the sheriff, he shall accept the same, and restore the said goods to the owner* This last provision, for a restoration of the goods after the debt is naid, not only amounts to the revestiture mentioned as being required as aforesaid, and shows, that when such restitution was intended, the legislature knew how to use the appropriate terms to effect it, but would have been wholly superfluous, if such restitution had been effected by the previous provisions of the act, allowing a forthcoming bond to be taken.
This was, at that time, the only legislative provision on the subject of forthcoming bonds ; it was not until the year 17C9, that they were, in event, declared to have the force of judgments, and placed on their present footing.- Nor was it until the year 1748 that the provisions relative to replevy bonds were introduced into our code.
We have already seen that a particular lien is created upon the identical goods seized in execution, in lieu of the general one existing prior to levying the same ; and that the sheriff, in consequence of his liability to the plaintiff, and of this lien, may recover the goods seized by an action of trespass or trover. There is nothing inconsistent with this lien, in the permission given to the *443 debtsr by this act, to hold his goods for a few days, and uni.il the day of sale. The lac er right is merely an exception out of the former, for the convenience of the 1 . debtor, and whose custody is, for the time, the custody of the sheriff. It merely amounts to this, that the custody of the defendant, allowed by the act, is not such an eloigning of the goods as would authorize the sheriff to sue therefor. It would excuse him in case of non-delivery There is no such incompatibility between the right of the sheriff, and that of the defendant, under the delivery bond, as must repeal the former by implication, and deprive the debtor’s custody, authorized by this act, of its accumulative character The two may well stand together; the one respects the right, and the other the possession, of the property, until the day of sale. There is not only no such incompatibility between the two, as, in default of an express provision of the act to that effect, would deprive the debtor’s right of custody of its accumulative character, and make the bond, before its forfeiture, a substitute for the execution, but that construction would exhibit a case entirely anomalous in our laws. It would exhibit the spectacle of an execution, which still remains in force, (for it is only by its virtue that the goods, if delivered at the day, can be sold,) losing its lien upon the goods, on which it attached by their seizure, and having lost its general lien before, by that seizure, continuing to exist without any power whatsoever over any of the debtor’s property. It would exhibit this spectacle, and by depriving the execution of its soul, (if I may so express myself,) leave it a mere caput mortuum, in the face of the principle, which declares, that when the execution haa once begun it cannot be suspended. It would, in fact, suspend the essence of the execution, although the execution itself would be permitted to remain in existence. It is acknowledged, on ail hands, that if the goods are delivered, the sheriff is to proceed to sell them. He is so to proceed, although no new seizure or lien on them is remve.d or created^ and *444 although no power to sell them, in case of delivery at the day, is given by the act; but the common law right to sell, after seizure, and by virtue of the lien thereby created, is only admitted, or recognised, by the preceding provision of the act. He is to sell them, although, certainly, the condition of the bond (which is merely to deliver them at the day and place of sale) cannot, of itself, confer a right to sell. When, therefore, the sheriff is authorized to sell the goods, in the event of the delivery, under the bond, and that right is neither expressly given by the act, nor is any nexv lien created or revived thereby, or by the bond, competent to carry with it the right to sell; and as a mere compliance with the condition, of the bond does not confer such right, it is only the old lien which gives that right; unless we are prepared to say, that a sale may be made under an execution which has never been levied on any goods, and much less on the goods offered for sale, or (which is the same thing) upon goods which, though once under a lien, have been absolutely and completely liberated therefrom. There is not only no provision in the act, reviving a lien on ’the goods supposed to be liberated, or expressly giving to the sheriff a right to sell them in case of delivery, but such provisions would have been equally unimportant and unnecessary. It was not necessary to destroy or disturb the even tenor of the existing lien, for the mere and sole purpose of reviving it again, at the end of a few days. There is, therefore, an equal defect of such a provision, and of any rational ground on which to have founded it. The admitted right to sell the goods, therefore, under all these circumstances, is conclusive to show, that the old lien has never been lost, nor extinguished; it is more conclusive from this consideration, that that right is confined to the same goods which were seized under the execution.
If it is asked, to what purpose is it that this lien is continued, when the sheriff has no right to disturb the custody of the debtor until the day of sale 5 I answer, it *445 is equally necessary to enable the sheriff to sell the goods, if delivered, and to preserve his right thereto, if not delivered. I here speak of the case as depending upon the acts prior to that of 1769, which gave to forfeited forthcoming bonds a new character, and destroyed the lien after the day. If it be further asked, why, when this last-mentioned circumstance destroys the lien after the day, (under the present acts,) and when the sheriff’s power over the goods was obstructed by the delivery bond up to the day of sale, is the lien to be considered in force for the mere pittance of time comprised in the day of sale? the answer is still the same; to enable the sheriff, then, to sell; to preserve the principles arid symmetry of the law, and to hold the debtor’s goods liable to pay his debts (if he or his sureties should deliver them) in ease of his said sureties.,
I may ask, on the other hand, why is this lien not to continue ? Is it to enable a debtor to saddle an innocent surety with a debt due by himself, by releasing the proper fund for that purpose ? Is it to enable a subsequent creditor to get the advantage of a prior one, who has been diligent, and, certainly, did not contribute to the act by which such release is supposed to be effected ? Are these the favourite objects of the law ? Are they to be effected by remote implication and construction ? and under a provision introduced solely for the debtor’s benefit and convenience ? Certainly not.
It is not a natural construction, in considering the effect of the act in question, that an execution, which is the end of the law, and cannot be suspended, should be surrendered up, or deprived of its power, for a mere right of action upon the forthcoming bond ; a right of action, too, only inchoate up to the time of forfeiture ; and that, under circumstances which, for want of a provision (prior to the act of ,1769) that “ no security should be taken” on serving the execution founded thereon, would involve a plaintiff in the never-ending course of litigation, stated as the evil intended to be remedied by *446 that act. It would have been a great aggravation of that evil, if the lien acquired by the sheriff, Ly executing the writ off. fa., and which gave the creditor his remedy over against him, should be also adjudged to have been lost.
If that lien in favour of the sheriff, and the plaintiff’s remedy against him, bottomed thereupon, should be adjudged to have been lost by the delivery of the goods to the debtor, on his executing the forthcoming bond, and if, prior to the act of 17-9, the said debtor’s goods could again have been restored to him on executing a new forthcoming bond, under the judgment rendered upoa the former one, and so, Cotíes quoties, ad infnitum, the plaintiff would, indeed, have been without all remedy to obtain satisfaction for a just debt. This is a state of things which would never have been submitted to in this enlightened country, for nearly forty years, and until the act of 1769 provided the remedy. If that state of things did not exist, it was only because the sheriff’s lien, acquired by levying the execution, still remained, notwithstanding the execution of the. delivery bond, and in virtue of which he remained liable over to the plaintiff. If it be said that this lien was obstructed by the delivery of the goods to the debtor, up to the day of sale, and impaired by the non-delivery of them after the day, that proves nothing as to the principle of the point in ques-» tion; it proves nothing as to the effect of a bond as before the day of delivery, and which it is not to be presumed will be forfeited ; and even after the non-delivery at the day, it could only impair the plaintiff’s right of recovery, and graduate it by the scale of the sheriff’s impaired right of possession under his lien. It proves nothing as to cases in which the sheriff could, in fact, make that lien effectual. Again, if it be said, that the act of 1769, ch. 3. sect. 1.,(a) declares, that no other remedy existed prior thereto, for the creditor or officer, than the inadequate one of suing on the forthcoming hopd, as is therein particularity stated ¿ the answers arc*
*447 ¿NThat this is only legislativ^; [jjjpg law upon the subject and,|| ^yhis Court; and, 2dly. That $j¡á other remedy ex'sted, biiff$ is^uction of the not binding il^ does not say Ijjpat none such (i. e- in the act of 2^p¿$‘.i||í; ch. 48. provrSfei,' It does not profess to speak 'á0£o any remedy arising from any other source, or one given by the principles- of the common law.
This construction is corroborated by every provision of the act; for, 1st. This remedy of a forthcoming bond is given by way of proviso, which always operates as an. exception ; the lien acquired by the sheriff exists, therefore, subject to the right of custody of the debtor ; 2dly. The goods are to be suffered, by the sheriff.\ to remain with the debtor until the day of sale; which expressions, “ suffered, and remain f are equally indicative of a right in the sheriff, and inconsistent with the idea of an absolute and exclusive ownership in the debtor; 3dly. They are to remain in the possession of the debtor, which provision also excludes the idea of property in hind; 4thly° They are also to be at his risk until the day of sale; a provision wholly^superfluous and unnecessary, not to say-absurd, if the lien on the goods was discharged by giving the bond; 5thly. The omission to provide, in the act¿. that the property should be restored at the time of giving the bond,- and only providing therein, on the contrary, that it should be restored in the event of a payment, or tender of the debt, at the day of sale, is conclusive that it is the latter, and not the former, circumstance which releases the lien.
These considerations, growing out of the very provisions of the act itself, are entirely corroborated by the aforesaid principle, that the property in the goods being devested from the debtor, by levying the execution, and in abeyance, (as we have seen,) it would require explicit affirmative words to restore the same to him. No such words are found, howe'ver, in the act, but entirely the Contrary. No such restoration is provided for, until *448 after the money ^|Meen paid. There are not jagp&o words in the actífppquate to restore the propertfjMf|Iic debtor, prior to event, but neither are thtfpBrany adequate to revive the lien (on a supposition that .if has been suspended) iq'favour of the sheriff, nor to authorize him to sell. His acknowledged right to sell, therefore, under these circumstances, is conclusive to show, as aforesaid, that this lien has never been suspended nor extinguished.
This construction thus resulting, as well from the general principles of the law, applying to the case, as from the particular provisions and expressions of the act of 1726, is supported by analogous provisions in some of our ancient statutes.
For example, by the act of 1705, ch. 37.,(a) in rela.tion to goods taken in execution, subject to appraisement, and delivered to the debtor, he giving bond to have them forthcoming, for the purpose of appraisement, at the end of three days; that the goods so seized are not released by the giving of the bond, is evident from this circumstance, that the property thereof, after appraisement, is, also, declared to be in the sheriff, for the benefit of the creditor. The lien of the sheriff, acquired by the seizure of the goods, so far from being yielded up to the debtor before the day, is, after the day, extended into a permanent one in favour of the creditor.
In this case, notwithstanding the custody of the goods remains for a short time with the debtor, exempt from the. power of the sheriff, and notwithstanding the existence of a bond for their delivery, for the purpose of appraisement, the goods, so far from being released by either circumstance, are held to be specif cal ly bound, after appraisement, in favour of the creditor. If they were released from the lien created by the service of the execution, by reason of the custody and bond aforesaid, they would not thereafter remain bound in favour of the creditor, without the operation of some new seizure or /¡ere, of which none is pretended to have existed. So, in the *449 ease before us, the Hen on the goods remains, without any new act, and the same goods are to be sold, without any new seizure, if delivered agreeably to the condition of the bond. This result is not varied by the circumstance that, by a subsequent act, another and additionaVremedy is provided in the event that the goods aháfl not be delivered
If, in the case made by the before-mentioned ancient statute, therefore, it is found, that neither the custody of the goods thereby permitted to the defendant, nor the bond given, to have them forthcoming for the purpose of appraisement, was construed to restore to the defendant the goods devested out of him by the execution ; this construction holds á fortiori in the case before us, in which the act in question has provided that another event only, namely, the payment or tender of the sum due, should work such restoration. I may add, as a convincing circumstance in both cases, that the shortness of time, in whicr the goods were to remain with the debtor, forbids the idea that the destruction of the lien was intended. It could answer no purpose, and would be even ludicrous, to destroy the Hen for the mere purpose of reviving it at the .end of three days.
Thus the law stood till the revisal in the year 1748, when the three months’ replevy bonds were first introduced into our code.(a) A replevy bond under that act operated a release of the property: - 1st. Because it is expressly provided, that, on the giving thereof the property shall be restored to the debtor: 2dly. Because the surety therein is to be approved by the creditors a circumstance very material in a bond considered affa substitute for an execution, and wanting as to the sureties upon forthcoming bonds : 3dly. Because a replevy bond obtained the force of a judgment, by the mere giving thereof, though its execution was suspended till the expiration of the three months, and did not owe its obligation, as a judgment, to the breach of the condition thereof, as is the case of forthcoming bonds : and, 4lhlv, Because at* *450 security was to be taken on the executions issued thereoa %. a circumstance wholly wanting as to forthcoming bonds, prior to the act of 1769. There being these material points of difference, therefore, between the two descriptions of bonds, it by no means follows that, because the replevy bonds operated a release of the property taken, the forthcoming bonds, taken under the act of 17'-d, h id a coextensive effect.
We are next to inquire, whether the act of 1769 made a change in this respect, and operated a release of the property, taken in execution, prior to the forfeiture of the condition of the bond ?
The act of 1: ¡ 9, ch. 3.(a) after reciting the Kfore-mentioned provision of the act of 17^6, in relation to forthcoming bonds, adds, that, in case ihe debtor refused to deliver up the goods, no remedy was therein provided for the creditor or officer, who, be.ing therefore obliged to commence a new suit on the bond, was compellable, on another fi.fato accept security to have the goods forthcoming, and might be thereby prevented from ever recovering his debt. The provisions of this act (as I have before remarked) seemed confined to the remedy provided by the act of 1726; namely, that upon the forthcoming bond. If does not purport to relate to any concurrent remedy given by the common law; nor, if it did, would its decision, that none such existed, be binding on this Court. It is not conclusive, therefore, to prove that, prior to the act of 176Í3, giving to forthcoming bonds a new character, the lien on the goods did not continue, even after the non delivery thereof by the debtor. The mischiefs intended to be remedied by this act, were, the being driven to a new action upon the bond, in case of forfeiture, and compelled to submit to a new forthcoming bond, on the service of the execution founded thereon. The remedy provided was. that, as to the first, the bond, after forfeiture, should have the force of a judgment; and, as to the last, that no security whatever should be taken. These mischiefs and remedies, however, contemplate?!, and only contemplated, the case of a bond *451 éfter the forfeiture; as to the operation and effect of 'such bond prior thereto, and under which the delivery of the goods may be presumed, no mischief is alleged to havp existed, nor is any remedy provided. Under this act, therefore, every thing already, srdd i» favour of the é’ilsíehce of the sheriff’s lien, notwithstanding the indulgence given to the debtor, equally applies until the bond acquires a new character by the forfeiture, as it did before the passing of the act. When that act provides, that the same goods shall be delivered up to the sheriff at the day of sale, it is difficult to conceive how the lien created by the service of the execution has been released. It is not easy to discern how a penalty, devised to enforce the delivery of the property at a certain day, could absolve die party from the necessity of such delivery: or ho -• ,• duty enjoined by law, is to be dispensed with by a construction arising out of the act enj ining it. In (me, if the sheriff's lien on the property is released by the mere giving of the bond it is not easy to see by what authority he is justified in selling; the goods when, delivered agreeably to the condition thereof^ A condition to deliver property to the sheriff,- does not authorize him to sell, unless some coeval lien is created, (which is not pretended in this case,) or unless the former lien still remains; no new lien is created, and it is an anomaly in our law that the sheriff shall sell without a lien.
Admitting that there is an analogy between forthcoming bonds, under the act of 1769, and replevy bonds that an alo y commences orly after the. forfeiture of the condition of the former. After that event, they become, perfected under the act; which is the case of replevy bonds from the beginning, with the exception that three months must elapse before they áre to be put in force. Prior to such forfeiture, the former class of bonds have not the force of judgments. Prior to the day mentioned in the condition, they are defeasible by the delivery of the property. Prior to the forfeiture, they are mere collateral and inchoate bondsliable to be ripened, however, by *452 the efflux of time, and the non-performance of the ctfttdition thereof, into instruments having the force of judgments. Admitting, therefore, that, from the superior dignity of a replevy bond, or a forthcoming bond after the forfeiture thereof, they are to be considered as substitutes for the execution, and to release the property attached thereby, it does not follow that the same dignity is due to this conditional, inchoate, and imperfect instrument; imperfect, I mean, when considered as a judgment. It is conceding enough, on the ground of construction, that an execution, this life, and eud, and fruit of the law, should yield to a /isr/ecKjudgment, and not to this imperfect, inchoate, and conditional one. It is too much to expect that the lien created by the execution should be lost, before even a perfect right of action is given in lieu thereof; for no right of action accrues upon the bond, until the forfeiture thereof has been incurred. It is too much to yield to construction, on this subject, that the execution should lose its hold on the property, before even a right of action has been perfected, for which that execution is to be exchanged. It is ,too much that a provision introduced for the mere convenience and accommodation of the debtor, and which, according to every rule of construction, is a mere cumulative one, should receive a construction deranging every principle of law applying to questions of this kind, and leaving the execution without any effect or power whatsoever. If it be said, that the lien of the sheriff is lost, in consequence of the right of custody being in the defendant, on the principle that where there is no remedy there is no right, the answer may be repeated, that it is no novelty in our code that the right of property should be - in one man, and the right of possession in another. Another answer is, that this argument equally held in relation to these bonds, prior to the provisions of the act of 1769 5 and, then, if the lien of the sheriff (for. the benefit of the creditor) had been held to be lost, it was altogether without an equivalents as forfeited bonds had not then *453 the force of judgments : a construction so unjust, that it ought not for a moment to be entertained.
If it be said that this construction would render unalienable all the property covered by the bond, several answers occur to the objection. Isf. Thai it was not the policy or intention of the act to give the debtor power over the property of the goods sei‘¿«4v N d delivered to him on executing the forthcoming bond ; but only over the custody or possession thereof* This is sufficiently manifest from the words of the clause itself, already noticed; 2dly. That this supposed exemption would continue but for a very few days; and, 3dly. That the right of the debtor to sell the property, or of another creditor to seize it, subject, however, to the first execution, is not impaired by giving the bond. The right over the property, in this last respect, is exactly similar to that which exists over property actually held by the sheriff; and the right of the debtor, or a subsequent creditor, as aforesaid, to sell or seize it, subject to the former lien,\e a sufficient check against abuses in covering too much property. It may further be remarked, not only that'this act depends on, the officer, and not on the debtor, but also that the provision of the act, prohibiting unreasonable seizures, extends as well to property relieved by forthcoming bonds, as to such in which no such bonds have been given: it extends to all cases of seizures by fi. fa., whatever the ultimate fate or destination of the goods may be.
An idea seems to have gone forth,’, that the creditor may sell the property for the purpose of paying the debt at the day. A right to sell implies a right of property in the articles sold: but this right is reprobated, in the case before us, by the provisions of the act in question, which imply merely a right of custody or possession, and not a right of property. Besides, the rights of the surety are to be attended to; he ought to be permitted to do that which &he law authorizes him to guaranty to be done; to deliver the property. If the debtor has a right to sell the property, to pay off the execution at the day. *454 he may sell, and not pay it, but saddle the securities -Nib the loss, by squandering the money. Their interest, as we]j as eVery other consideration, combines to hold the property liable. , The convenience of the debtor, in other respects, and to save him the expense of supporting the property by the sheriff, were the motives of this indub» gence; and not to give him air opportunity to sell. H© lias the same right to "sell this property, however, as property in the actual custody of the sheriff.
It has been said, that the forthcoming bond operates a release of the property, from the time of its execution, in consequence of the obligor’s right to forfeit the same. There is no such right of forfeiture, in a case in which the bond admits a duty, and provides for its fulfilment under a penalty. The bond is entirely collateral to and was intended to preserve the lien, and enforce the performance of the duty. I entirely concur in opinion with one of the judges* in the case of Cook v. Piles,(a) that a forthcoming bond is no satisfaction of a judgment, until the forfeiture; and I think it follows that, until such satisfaction has taken place, the lien created under the judgment is not extinguished. The old right does not cease, until the new one is authorized to succeed it. No chasm between the two, is to be created by implication or construction-
In fine, while I see no utility in considering the property as released prior to the day of sale, I can, by a very simple process of reasoning, consider the property, though loaned to the debtor for a few days, to promote his convenience, as still in the hands of the sheriff, and liable to satisfy the execution ; which property, however is liable to be redeemed, and revested in the debtor after the day, if, by a non-compliance with the condition of the bond, that bond shall then assume the new dignity given to it by the provisions of the act of 1769.
The foregoing remarks have considered the question *455 principally in relation to the debtor himself. If the object of the law was (as it is not) to enable the debtor to make sale of his goods, for the purpose of paying the debt at the day, (a duty which, from his standing out so long already, he has evinced he had no desire to fulfil,) .vt object would be entirely answered by extending the pou ;-r over the goods to him only : but that is not the case, This doctsine, of a release ment of the lien, lets in the power of other and subsequent creditors, who, by instantly seizing the same goods, would disable the debtor from, effecting the alleged object of the indulgence. If the ease he considered in relation to the creditors, there is no reason why prior creditors should not be preferred to those who are subsequent. There is no reason why goods, let oat to the custody of the debtor, should be differed, in his favour, from those actually holden by the sheriff; nor why, in the first case, as well as the last, the right claimed by the last execution should not be considered in subordination to that vested under the first. I can see no such magic in the custody of the debtor, holding-under the sheriff that it should derange all the principles and symmetry of the law in this particular: nor why prop.-rtf, under those circumstances, should by differed from that actually in the chambers of the sheriff. Thera is no principle of the law, on which such a diversity can be justified; there is no principle, which, on this immaterial and unimportant ground, can affect the rights of innocent sureties, disable them (and even the debtor himself) from performing that which the law has allowed and enjoined them to do — discharge the propetty justly liable to pay the debt, and give subsequent a preference over prior creditors. If such is thy doctrine of the law, I see no solid basis on which it can be erected.
In assigning the above as some of the reasons on which my opinion, on t’.is question, is founded, I beg-leave also io refer, in corroboration thereof, to the able argument of the chancellor, found in the record. He has also added some very appropriate remarks, as applicable to *456 this particular case, which, in the view I have taken of the subject, do not appear to me to be absolutely necessary.
It was observed, that Boys 8? M'-Cahnont should be parties to this suit. The answer is, that the appellee wants nothing from them. They,have received their money; and if any body has a claim against them, it is the sheriff, who, by mistake, or in his own wrong, paid them the money made under their execution. Every purpose of the appellee will be answered by enjoining the judgment on the forthcoming bond. It is next objected, that Jones, the creditor, in that bond, is no party. He has answered the bill, and, I think, is, undoubtedly, a party. It is admitted that the subpoena extends to him ; and so does the bill,. which prays, that the plaintiffs (Jones,) the sheriff, and all parties may be enjoined,’* he. As to Waytt, he may have acted by advice, and his motives may not have been improper; but he has erred, to the appellee’s prejudice, and should make retribution. If, in* consequence of the decision now to be given, he is liable to Jones for his money, he’has probably, from the proofs, in the cause, his remedy over against M'Cleland.* At any rate, the decree of the chancellor, that this money should not be coerced from the appellee, after he has, in effect, complied with the condition of his bond, or the non-compliance was owing to the sheriff, is entirely just and equitable, and should be affirmed.
Judge Fleming.
I have ever been of opinion that goods taken by virtue of a fieri facias, for the delivery of which, at the day of sale, a forthcoming bond had been given, were not released until the day of delivery had past; but were only suffered to remain in possession of the debtor, for his own convenience, and the ease of the sheriff; nor were they subject to another execution until after that time ; for, in my conception, the law cannot (nor was it ever intended by the legislature that it *457 Should) step in by its own officer to arrest and render Impossible, to frustrate, or obstruct, what the law itself requires or permits to be done ; especially, when it may tend to the distress and irreparable injury of an innocent third person. '
In the case before us, the reasoning of the chancellor, as well as that of the worthy judge who last delivered his opinion, appears to me too sound, cogent, and conclusive, to require any further observations on the construction of the act of Assembly permitting forthcoming bonds to be given.
Besides, on a careful perusal of the whole record, it seems to me, that there was a combination among Lusk, Moore, Waytt, and M'-Cleland; in which they artfully practised a palpable fraud on William Ramsay, the intes» táte of the appellees, (who was wheedled and entrapped into the suretyship in the delivery bond,) in order to secure a desperate debt of Boys RBCalmont, and to saddle that of Jones & Co. on Ramsay, a credulous, unsuspecting, and innocent security in that bond; or why was not judgment rendered also against Moore, a former partner of Lusk, in trade, who at first claimed the goods taken in execution, but afterwards gave them up, and was also the other security in the bond, and who has, hitherto, had the address to keep his own neck out of the collar ?
Without further remark, I most cordially concur in the opinion that the decree, perpetuating the injunction, is correct, and therefore affirmed..

 Gilbert's Law of Executions, p. 15; 2 Saund 47.; 1 Lev 282; 1 Salk. 322; 2 Ld Raym. 1072.; and 6 Mod. 290.

 Revised Code, vol. 1, 298.

 2 Wash. 189.

 1 Call, 492.

 2 Bac. Abr. 648.

 Ibid. 720.

 Ibid. 733.

 1 Salk. 322. Clerk v. Withers.

 1 Burr. 34. Cooper, &c. v. Chitty, &c.

 1 Salk. 322. Clerk v. Withers.

 1 Burr. 34. 1 Salk. 322.

 1 Salk. 322.

 Cowp. 298. Rex v. Jackson; & 11 Co. Rep. 63. Dr. Foster's Case

 Ch. Rev. 2.2.

 3 Hen. Statute at large, p. 385.

 Edition of 1769, p. 194.

 Ch. Rev. p. 4.

 Judge Cabell.

 2 Munf. 153.

 Note. He was the attorney who obtained the judgment for Moya & M'Calmant.